**NOT FOR PUBLICATION**  **CLOSED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                      :
JORGE MURIEL,                         :
                                      :
          Plaintiff,                  :   Civ. No. 05-4383 (JAP)
                                      :
     v.                               :
                                      :   **OPINION**
COMMISSIONER OF SOCIAL SECURITY,      :
                                      :
          Defendant.                  :
_____:

APPEARANCES:

Agnes S. Wladyka, Esq.
Abromson & Carey
60 Park Place, Suite 601
Newark, NJ 07102
     *Attorney for Plaintiff*

Christopher Christie
United States Attorney
Kimberly L. Schiro
Special Assistant United States Attorney
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
     *Attorneys for Defendant*

PISANO, District Judge.

This matter comes before the Court pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff Jorge Muriel ("Plaintiff" or "Muriel") seeks reversal of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying, in part, his claim for Disability

Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). Plaintiff, whom the Commissioner found disabled as of February 22, 2004, contends that he was, in fact, disabled as of October 27, 2001. The Court has jurisdiction to review this matter under § 405(g) and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. The issue presented is whether there is substantial evidence to support the Commissioner's decision that Plaintiff was not disabled as of October 27, 2001. For the reasons stated below, the Court finds that there is substantial evidence to support the Commissioner's decision.

**I. BACKGROUND**

*A. Plaintiff's Personal and Medical History*

Plaintiff is a forty-eight year old man from Union City, New Jersey who currently suffers from a physical impairment resulting from back surgery, degenerative disc disease of the cervical and lumbar spine, and rheumatoid arthritis. Muriel's educational background indicates that he took special education classes and completed the ninth grade. There is evidence that Plaintiff suffers from a learning disability, is illiterate, and has difficulty with math. Muriel's employment history indicates that he has previously worked as a painter, which required him to climb and lift heavy objects, and as a taxi driver in Hoboken, New Jersey, during which time he occasionally had to carry luggage. Most recently, Muriel worked at Kentucky Fried Chicken as both a cook and maintenance worker. As a cook, he stood for long periods of time and lifted heavy trays of chicken weighing approximately sixty pounds. As a maintenance worker, he painted and installed tiles. Plaintiff's employment at Kentucky Fried Chicken ended in 1998 and he has not engaged in substantial gainful activity since then.

On January 17, 1994, Muriel was involved in car accident and injured his back. Due to

the lingering effects of the accident, Plaintiff underwent back surgery in 1999. The surgery, however, proved unsuccessful: Plaintiff testified that he experiences constant lower back pain, leg pains, and numbness and tingling in the lower extremities. Further, he has difficulty both sitting and standing for prolonged periods of time due to stiffness and lower back pain. After his surgery, Muriel eagerly sought employment of a non-verbal variety. The New Jersey Division of Vocational Rehabilitation Services attempted to place Plaintiff in a non-verbal position, but those efforts failed because of Muriel's inability to walk or sit for prolonged periods of time. (Administrative Record ("AR") 148.)

Plaintiff testified that he spends most of his day in a lying position. In addition to his leg and back pain, Muriel experiences neck pain for which he receives shots. He has difficulty using his hands, which are prone to swelling, and if Plaintiff lifts his hands above his shoulders, he experiences numbness. Though he could not recall the exact names, Muriel takes medication and receives monthly injections to treat to his rheumatoid arthritis. As of the date of his hearing before the ALJ, Plaintiff was living alone and collecting welfare. He is able to perform the basic tasks of daily life, including shopping, cooking, and doing the laundry. Muriel, who is able to drive, occasionally attends church, and visits friends and family.

Muriel's relevant medical history begins with a June 26, 1994 evaluation by Dr. Jerome B. Margolies, M.D. ("Dr. Margolies"). Dr. Margolies noted that a psychiatric exam revealed that Plaintiff suffers from Dyslexia and is unable to read. (AR 146.) In terms of physical impairments, Dr. Margolies found that Muriel had marked pain and tenderness in his lumbosacral spine region and marked restrictions in all movements of the trunk, lower back and lower left extremity. (AR 146-47.) Additionally, Dr. Margolies noted pain and tenderness in

3

Muriel's lower extremities due to pain radiating downward from his lower back.  As a result, Dr. Margolies opined that Muriel is "unable to lift, push, pull or kneel." (AR 147.)  In July 1994, Dr. Max Kaufman Ph.D. ("Dr. Kaufman") performed a battery of cognitive tests on Plaintiff and found, *inter alia*, that he is a person of low borderline intelligence with a Full Scale IQ of 81, a Verbal Scale IQ of 73, and a Performance Scale IQ of 92.  (AR 150.)  Muriel demonstrated reading ability at the 1.4 grade equivalent—essentially the ability of a non-reader—and math skills at the 4.7 grade equivalent, indicating a developmental arithmetic disorder.  (AR 152.)

In September 2002, Dr. John Sawicki, D.O. ("Dr. Sawicki") examined Plaintiff, who complained of neck, shoulder, arm, and lower back pain.  (AR 153.)  Muriel exhibited a normal gait, but reported paraspinal and left trapezius pain.  Dr. Sawicki found that Plaintiff had restricted range of motion with his back and lower extremities, but that Muriel was able to squat, stand on his toes, and stand on his heels.  (*Id.*)  In December 2002, Dr. Elias Fernandez, Ph.D. ("Dr. Fernandez") performed a mental status exam on Plaintiff.  Dr. Fernandez concluded that Muriel was a person of borderline intellectual functioning and that his current GAF was 68-70.  Additionally, Dr. Fernandez noted Plaintiff's complaints of lower back pain and arthritis and found that Muriel was suffering from anxiety disorder.  (AR 159-60.)

Between September 2, 2002 and March 12, 2003, Plaintiff made several visits to Dr. Shaik Abubakar, M.D. ("Dr. Abubakar").  An MRI of the cervical spine showed "slight reversal of the usual cervical curvature," "[m]ultilevel disc degeneration," and "degenerative bony ridge formation" and probable "encroachment on the exiting nerve root." (AR 222.)  Dr. Abubakar, however, found "no evidence of focal disc herniation." (*Id.*)  On February 13, 2003, Dr. Abubakar diagnosed Plaintiff with rheumatoid arthritis and cervical disc disease.  (AR 166.)

4

Soon thereafter, Plaintiff began seeing Dr. Robert Fogari, M.D. ("Dr. Fogari") regularly. Muriel complained of persistent lower back pain and pain in multiple joints limiting his "ability to walk, lift, and stand for long periods of time." (AR 227.) Dr. Fogari diagnosed Plaintiff with rheumatoid arthritis and treated him with Mobic 7.5 mg BID, an anti-inflammatory, and hot packs. (*Id.*) Though the back pain persisted, the anti-inflammatory medication lessened the intensity of the pain. (*Id.*) Nonetheless, Muriel remained unable to stand or sit for long periods of time. (*Id.*) On March 12, 2004, Dr. Fogari opined that Muriel was unable to work due to rheumatoid arthritis. (AR 213.) On May 14, 2004, Dr. Fogari reiterated his diagnosis and stated that "Mr. Muriel suffers from rheumatoid arthritis and will continue to need treatment for the rest of his life. He is totally disabled." (AR 228.)

On April 2, 2003, Dr. Burton Gillette, a state agency medical consultatnt, performed a Physical Residual Functional Capacity Assessment ("RFC Assessment") which revealed that Muriel is able to lift twenty pounds occasionally, lift ten pounds frequently, stand or walk for about six hours (with normal breaks) in an eight-hour workday, sit for about six hours (with normal breaks) in an eight-hour workday, and push and pull limited only by his inability to lift more than twenty pounds. (AR 175-76.) Additionally, Muriel's RFC Assessment showed that he is able to balance, stoop, kneel, crouch, and crawl on a frequent basis. (AR 177.)

### B. *Procedural History*

Plaintiff filed an application for DIB and SSI on July 29, 2002, alleging an onset date of October 27, 2001. The Social Security Administration denied that application both initially and upon reconsideration. Upon Plaintiff's request, a hearing was held on April 20, 2004 before Administrative Law Judge ("ALJ") Richard L. DeSteno ("DeSteno"). On June 18, 2004, ALJ

DeSteno issued a partially favorable written decision finding Muriel disabled as of his forty-fifth birthday (February 22, 2004), but denying Plaintiff's claim that the onset date of his disability was October 27, 2001. The ALJ's finding that Muriel could perform sedentary work in the national economy was the principal rationale for denying Plaintiff's claim. Additionally, the ALJ's written decision contained the following findings:

> 1. The claimant met the non-disability requirements for a period of disability and Disability Insurance benefits set forth in Section 216(i) of the Social Security Act and was insured for benefits only through June 30, 2003.
>
> 2. The claimant has not engaged in substantial gainful activity since his amended onset date of disability.
>
> 3. The medical evidence establishes that the claimant suffers from a severe impairment involving the residual effects of back surgery, degenerative disc disease of the cervical and lumbar spine and rheumatoid arthritis. The evidence fails to establish any mental impairment that has had greater than a slight or minimal effect on ability to perform basic work activities and thus, it is not considered to be "severe."
>
> 4. The claimant has no impairment that meets or equals the criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4.
>
> 5. The claimant's subjective complaints of totally debilitating pain and other symptoms and limitations are not credible.
>
> 6. For all material times, the claimant's residual functional capacity was limited to performing the full range of sedentary work.
>
> 7. At all material times, the claimant has not been capable of performing the requirements of his past relevant work.
>
> 8. On October 27, 2001, the claimant was a "younger individual, ages 18-44." Since February 22, 2004, the claimant is considered to be a "younger individual, ages 45-49."
>
> 9. The claimant is illiterate in English.
>
> 10. The claimant has an unskilled to semi-skilled work background with no

evidence of any transferable skills.

11.  Based on an exertional capacity for sedentary work, and the claimant's age, education, and work experience, a finding of "not disabled" is reached, using as a framework, medical-vocational rules 201.23 and 201.25 for the period of October 27, 2001 through February 21, 2004.

12.  Based on an exertional capacity for sedentary work, and the claimant's age, education, and work experience, a finding of "disabled" is reached, using as a framework, medical-vocational rule 201.10 for the period since February 22, 2004.

13.  The claimant has been under a disability, as defined in the Social Security Act, since February 22, 2004, but not prior thereto.  Thus, he was not disabled on or prior to his date last insured of June 30, 2003, and is therefore not eligible for disability insurance benefits.

(AR 20-21.)  On August 19, 2005, the Appeals Council denied Muriel's request for review, finding "no reason under [their] rules to review the Administrative Law Judge's decision."  (AR 5.)  Therefore, the ALJ's decision represents the final decision of the Commissioner in this case.

Plaintiff challenges the ALJ's decision on three grounds.  First, Muriel argues that the ALJ improperly evaluated the medical evidence.  Specifically, Plaintiff asserts that the ALJ should have given more weight to his complaints of pain particularly because those complaints are consistent with the objective medical evidence.  Second, Muriel contends that the ALJ erred in finding that his impairments do not meet or medically equal a listed impairment in Appendix 1.  Third, Plaintiff argues that the ALJ wrongly concluded that he can perform the full range of sedentary work.

## II.  DISCUSSION

### *A.  Standard of Review*

The standard under which the District Court reviews an ALJ decision is whether there is substantial evidence in the record to support the ALJ's decision.  *See* 42 U.S.C. 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  "[M]ore than a mere scintilla," substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The inquiry is not whether the reviewing court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable.  *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Substantial evidence, therefore, may be slightly less than a preponderance.  *See Hanusiewicz v. Bowen*, 678 F. Supp. 474, 476 (D.N.J. 1988).

The reviewing court, however, does have a duty to review the evidence in its totality.  *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).  As such, "a court must take into account whatever in the record fairly detracts from its weight."  *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (internal quotations omitted).  The Commissioner has a corresponding duty to facilitate the court's review:  "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence."  *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987).  As the Third Circuit has instructed, a full explanation of the Commissioner's reasoning is essential to meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the

8

court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978).  Nonetheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

### B.  *Establishing a Disability Under the Act*

"In order to establish a disability under the Social Security Act, [a plaintiff] must demonstrate some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000) (internal quotations and citations omitted).  Further, a claimant must demonstrate that the severity of his impairment(s) renders him "not only unable to do his previous work" but also, "considering his age, education, and work experience," unable to "engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

Pursuant to 20 C.F.R. § 404.1520, the Commissioner employs the following five-step sequential analysis to evaluate each case and determine whether a claimant is "disabled" or "not disabled":

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

>   4.  If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."
>
>   5.  Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, a finding of disability will be entered. On the other hand, if the claimant can perform other work, he will be found not to be disabled.

20 C.F.R. § 404.1520(b)-(f). This sequential analysis requires the shifting of burdens of proof. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994); *Wallace v. Sec'y of Health and Human Serv.*, 722 F.2d 1150, 1153 (3d Cir. 1983). The claimant bears the burden of proof at the first four steps of the analysis. The burden then shifts to the Commissioner at the final step to prove there is other work in the national economy which the claimant can perform in light of her residual functional capacity, age, education, and work experience. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987).

### C. The ALJ's Decision is Supported by Substantial Evidence

Analyzing the evidence under the five-part framework, the ALJ concluded that Muriel was not entitled to DIB and SSI for the period from October 27, 2001 to February 21, 2004 because Plaintiff possessed the residual functional capacity to perform the full range of sedentary work. Plaintiff challenges the ALJ's decision on three grounds: (1) the ALJ failed to give appropriate consideration to Muriel's assertions of pain, (2) the ALJ wrongly concluded that Plaintiff's impairments do not qualify as a Listed Impairment, and (3) the ALJ erred in finding that Muriel can perform the full range of sedentary work. As explained below, the Court finds that Plaintiff's challenges to the ALJ's decision lack merit because there is substantial evidence

to support the ALJ's findings.

### 1. The ALJ's Consideration of Plaintiff's Assertions of Pain

Muriel contends that the ALJ failed to give the proper weight to his complaints of pain, physical limitations, and mental impairments, all of which, he contends, are supported by the objective medical evidence in the record. "Pain may be disabling . . ., and a claimant's assertions of pain must be given serious consideration . . ., even where those assertions are not fully confirmed by objective evidence." *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981). However, "subjective complaints of pain, without more, do not in themselves *constitute* disability." *Green v. Schweiker*, 749 F.2d 1066, 1070 (3d Cir. 1984) (emphasis in original). Subjective assertions of pain "must be substantiated by medical evidence" and the burden is on the claimant to demonstrate that he is unable to work. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992). As such, the claimant "must show that he has a condition which reasonably could be expected to produce the alleged symptoms that are the cause of his inability to work." *Id.*

Even when the objective medical evidence indicates the existence of a medically determinable impairment that could reasonably be expected to cause the pain alleged, the ALJ must "evaluate the intensity and persistence" of the claimant's alleged pain to determine whether, and to what extent, the pain limits the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). Further, when evaluating subjective assertions of pain, ALJs are to consider a number of other factors including the claimant's daily activities and the effectiveness of medication. *See* 20 C.F.R. § 404.1529(c)(3). Where the objective medical evidence supports a claimant's subjective assertions of pain, those assertions are entitled to "great weight." *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). Nonetheless, ALJs have discretion "to evaluate the credibility of a

claimant and to arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant." *Brown v. Schweiker*, 562 F. Supp. 284, 287 (E.D.Pa. 1983). A reviewing court should refrain from substituting its own credibility determinations for those of the ALJ, given that the ALJ had the opportunity to observe the claimant first-hand. *See Wier v. Heckler*, 734 F.2d 955, 962 (3d Cir. 1984).

      Here, the ALJ compared Muriel's objective assertions of pain to the record evidence and found that the relevant medical and non-medical evidence "does not support the extent of [Plaintiff]'s subjective complaints." (AR 18.) The ALJ did not completely discredit Plaintiff's testimony regarding pain. Instead, after careful consideration of a number of factors, the ALJ concluded that "[a]lthough the assertions of pain are reasonable to a degree, the overall record does not support them to the debilitating extent asserted." (*Id.*) The ALJ based his conclusion, in part, on the fact that Muriel "lives alone, drives a car, shops [by himself], visits. . . friends and family, does his own laundry, and cooks more than simple meals." (*Id.*)

      Contrary to what Plaintiff now argues, the ALJ did take in account the objective medical evidence indicating that Muriel suffers from arthritis and degenerative disc disease. Additionally, the ALJ specifically cited Dr. Fogari's opinion that Muriel is unable to work as a result of his physical impairments. Having reviewed and analyzed the objective medical evidence, the ALJ found that such evidence lent some support to Plaintiff's subjective assertions of pain, but not to the intensity and persistence that Muriel alleged. The Court finds no fault with the ALJ's conclusion that Muriel's assertions of pain were not entirely credible given the medical and non-medical evidence in the record, which the Court discusses *infra*. Further, this Court is not in a position to question the credibility determinations of the ALJ, particularly when those

determinations do not contradict the objective medical evidence. Plaintiff also claims that the ALJ failed to credit his testimony regarding his mental impairments. As discussed below, however, the objective medical evidence demonstrates that Muriel's mental impairments do not rise to the level of disability. Thus, there is substantial evidence to support the ALJ's finding that Muriel's subjective complaints of totally debilitating pain and other symptoms and limitations were not entirely credible.

### 2. Plaintiff's Impairments Do Not Meet or Medically Equal a Listed Impairment

Next, Plaintiff argues that the ALJ erred in concluding that Plaintiff's impairment does not meet or equal Listed Impairment 1.04, Disorders of the spine. Alternatively, Muriel contends that his orthopaedic condition and his mental impairments, taken in combination, meet or equal a listed impairment.

To demonstrate the existence of a disability at step three in the sequential analysis, a claimant must furnish evidence establishing that his impairment(s) meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Sykes v. Apfel*, 228 F.2d 259, 262-63 (3d Cir. 2000). The Listings set forth "impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525(a). Listed Impairment 1.04, Disorders of the spine, covers "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertebral fracture . . . resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04(A). In order to show that he meets Listed Impairment 1.04, the claimant must show "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain,

13

limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *Id.*

Applying that standard, the ALJ found that Muriel's orthopaedic condition did not meet the requirements of Listed Impairment 1.04. Plaintiff contends—without identifying specific evidence—that the objective medical findings do demonstrate compromise of a nerve root, sensory and reflex loss, and positive straight-leg raising test. That evidence, in Muriel's view, establishes that his physical condition meets Listed Impairment 1.04. The Court finds, however, that there is substantial evidence to support the ALJ's conclusion. Although Dr. Abubakar found probable "encroachment on the exiting nerve root," neither Dr. Abubakar nor any other physician made a definitive determination that Muriel exhibited nerve root compromise. Indeed, Dr. Fogari, who has seen Plaintiff several times and upon whose opinion Plaintiff relies heavily, did not diagnose him with nerve root compromise.

Additionally, the objective medical evidence demonstrates that Muriel has not suffered significant motor loss, sensory loss, or muscle weakness. As Dr. Sawicki observed, Plaintiff had a "normal gait," muscle strength in the lower extremities of 5/5, and a full range of motion in the upper extremities with no sensory loss. (AR 154.) Also, Muriel showed the ability to squat and stand on his toes and heels. (*Id.*) The Court finds that the foregoing evidence satisfies the substantial evidence standard with respect to the ALJ's conclusion that Plaintiff's physical impairment did not meet Listed Impairment 1.04.

Further, there is substantial evidence to support the ALJ's finding that Muriel's mental impairment does not meet Listed Impairment 12.05, Mental retardation. To meet the

requirements of Listed Impairment 12.05, a claimant must show, *inter alia*, a valid verbal, performance, or full scale IQ of below 71.  See 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.05.  Muriel possesses a full scale IQ of 81, a verbal scale IQ of 73, and a performance scale IQ of 92.  (AR 150.)  Thus, although the Court recognizes that Plaintiff is a person of low borderline intelligence with significant literacy and arithmetic limitations, there is no evidence to support Plaintiff's contention that his mental impairments meet Listed Impairment 12.05.

### 3. Plaintiff Retains the Residual Functional Capacity to Perform Full Range of Sedentary Work

Lastly, Muriel argues that the ALJ erred in finding that, prior to February 22, 2004, Muriel retained the residual functional capacity for the full range of sedentary work.  Plaintiff contends that this finding is in conflict with Dr. Fogari's statements that Plaintiff is unable to work.

Sedentary work requires the ability to lift and/or carry up to a maximum of ten pounds, to sit for about six hours (with normal breaks) in an eight-hour day, and to stand and/or walk for approximately two hours (with normal breaks) in an eight-hour day.  20 C.F.R. §§ 404.1567(a), 416.967(a); Social Security Ruling ("SSR") 96-9p.  When making determinations regarding residual functional capacity, ALJs should consider opinions from the treating physician, but those opinions are not entitled to controlling weight:

> Medical sources often offer opinions about whether an individual who has applied for . . . disability benefits is 'disabled' or 'unable to work,' or make similar statements of opinions.  In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work.  Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner.  Such opinions on these issues must not be disregarded.  However, even when offered by a treating source, they can never be entitled to controlling

weight or given special significance.

SSR 96-5p. State agency medical consultants "are highly qualified physicians . . . who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f)(2)(i). As such, ALJs "must consider findings of [s]tate agency medical . . . consultants . . . as opinion evidence, except for the ultimate determination about whether [a claimant] is disabled." *Id.*

In accordance with SSR 96-5p, the ALJ considered Dr. Fogari's opinion that Muriel is unable to work, but declined to give it controlling weight because, in the ALJ's view, the opinion was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques." The Court agrees with the ALJ that the available medical evidence contradicts Dr. Fogari's conclusory statement that Muriel is "totally disabled" and "unable to work." As discussed above, Dr. Sawicki's evaluation of Plaintiff revealed that he has no significant exertional limitations that would prevent him from performing the full range of sedentary work. Additionally, Dr. Gillette, a state agency medical consultant, opined that Muriel retains the ability to perform significant work-related activities.[1]

Significantly, Dr. Fogari, who rendered his opinions in March and May of 2004, did not opine that Plaintiff was unable to work as of October 27, 2001, the alleged onset date of disability. Moreover, Plaintiff's reliance on the findings of Dr. Margolies is unavailing. Though not completely irrelevant to Muriel's claims of disability, Dr. Margolies's 1994 findings are not

---

[1] The Court notes that the ALJ elected not to adopt Dr. Gillette's finding that Muriel retained the residual functional capacity to perform light work. Indeed, in the ALJ's view, that conclusion was inconsistent with the medical evidence and Muriel's testimony. The fact that the ALJ looked beyond the state agency medical consultant's finding with respect to Plaintiff's functional capacity and reached his own conclusion based on his analysis of the entire record belies Plaintiff's over-arching contention that the ALJ ignored the record and relied on his own speculation to support his findings.

entitled to the same weight as the findings made by physicians who examined Muriel during the relevant period. Further, considering that Muriel was able to work for approximately four years after Dr. Margolies examined him, the findings of that examination do not compel the conclusion that Plaintiff was disabled. In the Court's view, the opinions of Dr. Sawicki and Dr. Gillette provide substantial evidence for the finding that, prior to February 22, 2004, Muriel possessed the functional capacity to perform the full range of sedentary work, considering Plaintiff's age, education, and work experience. In reaching this conclusion, the Court notes that there is a lack of contradictory evidence beyond Dr. Fogari's conclusory opinion and Plaintiff's subjective assertions, to which the ALJ afforded the appropriate weight.

In sum, the Court finds that the ALJ appropriately analyzed the issues presented in Muriel's claim for DIB and SSI and set forth his findings in a detailed and well-reasoned written decision. Moreover, as discussed above, the Court concludes that there is substantial evidence to support each of the ALJ's findings. Accordingly, Plaintiff's request for remand is denied and the Commissioner's decision is affirmed.

### III. CONCLUSION

For the reasons stated above, the Court affirms the Commissioner's decision. An appropriate order accompanies this opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: March 29, 2007